[Cite as *State v. Jones*, 2011-Ohio-535.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


|                          |   |                        |
|--------------------------|---|------------------------|
|                          | : | JUDGES:                |
| STATE OF OHIO            | : | Julie A. Edwards, P.J. |
|                          | : | William B. Hoffman, J. |
| Plaintiff-Appellee       | : | Patricia A. Delaney, J.|
|                          | : |                        |
| -vs-                     | : | Case No. 2010CA00039   |
|                          | : |                        |
|                          | : |                        |
| EIERONSTAN D. JONES      | : | O P I N I O N          |
|                          |   |                        |
| Defendant-Appellant      |   |                        |



| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from Stark County Court of Common Pleas Case No. 2009-CR-1153 |
| JUDGMENT: | Reversed and Remanded |
| DATE OF JUDGMENT ENTRY: | January 31, 2011 |
| APPEARANCES: | |

For Plaintiff-Appellee

JOHN D. FERRERO
Prosecuting Attorney
Stark County, Ohio

BY: RENEE M. WATSON
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza South – Suite 510
Canton, Ohio  44702-1413

For Defendant-Appellant

BARRY T. WAKSER
Stark County Public Defender's Office
200 W. Tuscarawas Street, Suite 200
Canton, Ohio  44702

*Edwards, P.J.*

{¶1}   Appellant, Eieronstan D. Jones, appeals a judgment of the Stark County Common Pleas Court convicting him of possession of cocaine (R.C. 2925.11(A)(C)(4)(b)).  Appellee is the State of Ohio.

<u>STATEMENT OF FACTS AND CASE</u>

{¶2}   During the evening hours of July 21, 2009, Canton Police Sgt. Lester Marino and Officer Scott Dendinger were on patrol in the northeast section of Canton, Ohio.  They were working an extra detail pursuant to a grant for extra patrol in high crime areas known as the Weed and Seed Grant.  Sgt. Marino had been a police officer for 14 years, while Officer Dendinger had been on the police force for about 18 months.  The officers were in a marked cruiser, in uniform, working the 10:00 p.m. to 2:00 a.m. shift.  The northeast section of Canton was known to Sgt. Marino as a high crime area with high rates of drug activity, gun violence and prostitution.

{¶3}   Around 11:00 p.m., the officers saw appellant walking in the middle of the roadway in violation of a Canton City Ordinance.  Sgt. Marino pulled up next to appellant, and both officers exited the cruiser.  Marino asked appellant to step over to the car so they could speak with him.  Due to the high level of criminal activity in the area, Sgt. Marino began a *Terry* pat down of appellant when appellant approached the cruiser.  Appellant pushed away from the cruiser and attempted to flee.  Sgt. Marino apprehended appellant, and after appellant was handcuffed, found a plastic bag containing crack cocaine in appellant's pocket.  Officer Dendinger observed a smaller bag containing crack cocaine fall from appellant's person as Sgt. Marino apprehended appellant.

{¶4} Appellant was indicted by the Stark County Grand Jury with one count of possession of cocaine. He moved to suppress the cocaine on the basis that the *Terry* pat-down was not supported by a reasonable, articulable suspicion that appellant was armed. Following an evidentiary hearing, the court overruled the motion. Appellant thereafter entered a plea of no contest to the charge. He was convicted and placed on community control for three years. He assigns a single error on appeal:

{¶5} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

{¶6} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See *State v. Fanning* (1982), 1 Ohio St.3d 19, 437 N.E.2d 583 and *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Claytor* (1994), 85 Ohio App.3d 623, 620 N.E.2d 906.

{¶7}   Appellant argues that Sgt. Marino's pat-down search of appellant was unconstitutional.   In *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889., the United States Supreme Court held that a limited pat-down search is justified when an officer reasonably concludes the individual, whose suspicious behavior he is investigating at close range, may be armed and, thus, dangerous to the police officer and others. *Id.* at 24. Officers need not forsake reasonable precautionary measures during the performance of their duties. *State v. Evans*, 67 Ohio St.3d 405, 410, 1993-Ohio-186, 618 N.E.2d 162. The court must determine whether the officer had a reasonable, objective basis for frisking the suspect. See, *State v. Andrews* (1991), 57 Ohio St.3d 86. In determining whether an officer's beliefs are reasonable, a court must consider the totality of the circumstances involved in the stop. *State v. Bobo* (1988), 37 Ohio St.3d 177, 180, 524 N.E.2d 489. An officer need not testify he was actually in fear of a suspect, but he must articulate a set of particular facts which would lead a reasonable person to conclude a suspect may be armed and dangerous. *Evans*, supra, at 413. Rather, "[e]vidence that the officer was aware of sufficient specific facts as would suggest he was in danger" satisfies the test set forth in *Terry*, supra. *Id.*

{¶8}   An officer must have a reasonable *individualized* suspicion that the suspect is armed and dangerous before he may conduct a pat-down for weapons. See *Terry,* supra; *Ybarra v. Illinois* (1979), 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238.  See also *Maryland v. Buie* (1990), 494 U.S. 325, 334, fn. 2, 110 S.Ct. 1093, 108 L.Ed.2d 276 ("Even in high crime areas, where the possibility that any given individual is armed is significant, *Terry* requires reasonable, individualized suspicion before a frisk for weapons can be conducted.")

{¶9}   In *Ybarra,* police officers had a search warrant to search a public tavern and a bartender for narcotics. When the officer entered the bar, they announced that they were also going to search the patrons for weapons. One of the officers frisked Ybarra, who was one of the patrons, twice, and removed a cigarette pack containing several packets of heroin from his pocket. The United States Supreme Court held that the pat-down search of Ybarra was unconstitutional under *Terry*, supra, because the warrant did not authorize a search of the patrons and officers did not have reasonable suspicion to frisk Ybarra. *Ybarra*, 444 U.S. at 90-93.

{¶10}  The United States Supreme Court held: "The initial frisk of Ybarra was simply not supported by a reasonable belief that he was armed and presently dangerous, a belief which this Court has invariably held must form the predicate to a pat-down of a person for weapons.  *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612; *Terry v. Ohio,* supra, 392 U.S., at 21-24, 27, 88 S.Ct., at 1879-1881, 1883. When the police entered the Aurora Tap Tavern on March 1, 1976, the lighting was sufficient for them to observe the customers. Upon seeing Ybarra, they neither recognized him as a person with a criminal history nor had any particular reason to believe that he might be inclined to assault them. Moreover, as Police Agent Johnson later testified, Ybarra, whose hands were empty, gave no indication of possessing a weapon, made no gestures or other actions indicative of an intent to commit an assault, and acted generally in a manner that was not threatening. At the suppression hearing, the most Agent Johnson could point to was that Ybarra was wearing a 3/4-length lumber jacket, clothing which the State admits could be expected on almost any tavern patron in Illinois in early March. In short, the State is unable to articulate any specific

fact that would have justified a police officer at the scene in even suspecting that Ybarra was armed and dangerous." Id at 92-93 (footnote omitted).

{¶11} In *State v. Gilmer*, Stark App. No. 2009 CA 00283, 2010-Ohio-4631, this Court found that police did not have a reasonable, articulable suspicion to justify a pat-down of a bar patron. Officers had entered the bar to check the validity of the liquor license of the establishment. While in the bar, officers asked the patrons to produce identification. Appellant appeared nervous and attempted to quickly finish the two drinks in front of him so he could leave the bar. We concluded that the officer did not have an individualized suspicion that appellant was armed and dangerous because the officer testified that he did not go to the bar to find appellant, he had no reports that appellant was involved in any criminal activity and he never saw appellant with a gun. Id. at ¶41. The officer further testified that he did not see a bulge or any metal object on appellant that looked like a weapon and when appellant stood up, he did not see any suspicious objects on appellant. Id. The officer testified that the only reason he believed that appellant might have a weapon on him was because appellant was nervous while everyone else at the bar "seemed to …be okay with the fact that the police are in there checking the liquor license, asking for people's identification." Id.

{¶12} In the instant case, appellant was stopped for a minor misdemeanor offense. Sgt. Marino testified that he patted appellant down because of the "activity that goes on in that area." Tr. 9. Sgt. Marino admitted that he had no evidence or information that appellant was committing any offense other than walking along a roadway, and no information to suggest that appellant was armed. Tr. 11. Officer Dendinger likewise testified that he had no evidence or information that appellant was

committing an offense other than the misdemeanor offense for which he was stopped, and had no information or evidence that appellant was armed.  Tr. 16-17.

{¶13} Based on the evidence presented at trial, the officers did not have a reasonable individualized suspicion that appellant was armed.  As noted earlier, even though appellant was stopped in a high crime area where the possibility that any given individual is armed may be significant, *Terry* requires a reasonable, individualized suspicion before a frisk for weapons can be conducted.  *Maryland v. Buie*, supra.

{¶14}  The assignment of error is sustained.

{¶15} The judgment of the Stark County Common Pleas Court overruling appellant's motion to suppress is reversed.  This cause is remanded to that court for further proceedings according to law and consistent with this opinion.[1]


By: Edwards, P.J.

Hoffman, J. and

Delaney, J. concur

_____

_____

_____

JUDGES

JAE/r1014

---

[1] In the instant case, the search incident to a lawful arrest exception does not apply because under R.C. 2935.26, a suspect may not be arrested for a minor misdemeanor absent special circumstances set forth in the statute, which were not alleged in the instant case.  Therefore, an arrest would have violated Section 14, Article 1 of the Ohio Constitution and any evidence seized in a search incident to such arrest would be suppressed.  *State v. Brown*, 99 Ohio St.3d 323, 792 N.E.2d 175, 2003-Ohio-3931, ¶25.

[Cite as *State v. Jones*, 2011-Ohio-535.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                            :
                                         :
      Plaintiff-Appellee                  :
                                         :
                                         :
-vs-                                     :          JUDGMENT ENTRY
                                         :
EIERONSTAN D. JONES                      :
                                         :
      Defendant-Appellant                 :          CASE NO. 2010CA00039


For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is reversed and remanded to the trial court for further proceedings.  Costs assessed to appellee.


_____


_____


_____

JUDGES