[Cite as *State v. Holmes*, 2012-Ohio-1589.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | : | JUDGES: |
| STATE OF OHIO | : | William B. Hoffman, P.J. |
| | : | Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
| | : | |
| -vs- | : | Case No. 2011CA00101 |
| | : | |
| | : | |
| JOSEPH HOLMES | : | O P I N I O N |
| | | |
| Defendant-Appellant | | |

CHARACTER OF PROCEEDING:     Criminal Appeal from Stark County
                             Court of Common Pleas Case No.
                             2010-CR-1725

JUDGMENT:                    Reversed and Remanded

DATE OF JUDGMENT ENTRY:      March 26, 2012

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN D. FERRERO                       BARRY T. WAKSER
Prosecuting Attorney                  Stark County Public Defender's Office
Stark County, Ohio                    200 West Tuscarawas Street
                                      Suite #200
BY: RONALD MARK CALDWELL              Canton, Ohio  44702
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South, Suite #510
Canton, Ohio  44702-1413

*Edwards, J.*

**{¶1}** Defendant-appellant, Joseph Holmes, appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of possession of cocaine. Plaintiff-appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS AND CAS</u>

**{¶2}** On December 20, 2010, the Stark County Grand Jury indicted appellant on one count of possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(b), a felony of the fourth degree. At his arraignment on January 14, 2011, appellant entered a plea of not guilty to the charge.

**{¶3}** Appellant, on January 31, 2011, filed a Motion to Suppress all evidence. Appellant, in his motion, alleged that the police had no right to stop him, that they had no right to conduct a pat down search of his person, and that the evidence obtained from the search was not immediately apparent as contraband. A hearing on the Motion to Suppress was held on January 31, 2011. The following testimony was adduced at the hearing.

**{¶4}** On November 9, 2010, Canton Police Sergeant Lester Marino was working an extra job providing security at Skyline Terrace Apartments. The officer was with a partner in uniform in a marked cruiser. Sergeant Marino testified that the apartment complex had a high volume of drug and violent activity. The following testimony was adduced when he was questioned about the problems at the apartment complex:

**{¶5}** "A. There are problems at the apartment having to do with criminal trespass, high volume of criminal trespass. Unsavory individuals coming onto the

property and selling narcotics. We have problems with people coming from out of county to buy narcotics from New Philadelphia area, Carroll County frequent the property to purchase crack cocaine and marijuana.

{¶6} "Q. So people actually who don't live there, have no reason to be there, actually frequently come to buy and/or sell drugs?

{¶7} "A. That is correct.

{¶8} "Q. Are there also instances of violence there at those apartments?

{¶9} "A. Yes. Just recently we had a homicide within the complex and several gun arrests have been made there recently." Transcript of Suppression hearing at 9.

{¶10} Sergeant Marino had been told by the apartment management that buildings 901 and 921 had experienced a high volume of criminal activity, including drug activity and vandalism. At approximately 1:00 a.m. on November 9, 2010, Sergeant Marino and his partner, Officer Gillilan, observed appellant walking out of building 901 and heading south through the parking lot. According to Officer Marino, when appellant observed the officers, he changed his course and "made a beeline across the parking lot walking hastily towards Cherry Avenue." Transcript of Suppression hearing at 15. Sergeant Marino then told his partner that they needed to stop and talk to appellant to determine if he was a visitor to the apartment complex and, if so, if appellant had a visitor's pass to be on the property. Sergeant Marino testified that they often stopped people walking around the complex to see if they had such a pass and told them that they needed to obtain a pass from the office.

{¶11} The officers then proceeded out of the apartment parking lot and caught up with appellant at the corner of Cherry and Alan Page. When Sergeant Marino asked

appellant his name, appellant replied "Jo-Jo Holmes." Transcript of Suppression hearing at 18. When Officer Gillilan asked appellant who he had been visiting, appellant indicated that he was visiting some friends, but did not know what apartment number or building and was not able to provide the name of any person(s) who he had been visiting. Sergeant Marino testified that this made him suspicious and that if appellant had indicated who he was visiting and in what building, he would probably have checked appellant for warrants and then left.

{¶12} The officers then exited the cruiser and asked appellant to come over. Sergeant Marino then patted appellant down. When asked why he did so, the officer testified as follows:

{¶13} "A. I did that because of the area and the circumstances leading up to that point.  His actions as far as walking across the parking lot, he observed us trying - - it appeared to me that he was trying to evade us or at least get out of the apartment complex before we contacted him.  And I conducted a Terry patdown for officer safety purposes.

{¶14} "Q. When you say officer safety purposes, is there I guess particular officer safety concerns at those apartments?

{¶15} "A. Yes.  Due to the amount of weapons related calls and arrests down there, yes."  Transcript of Suppression hearing at 19-20.

{¶16} Sergeant Marino testified that while patting appellant down, as soon as he touched the outside of appellant's right pocket, he "felt what appeared to be a plastic baggie which is suspected crack cocaine." Transcript of Suppression hearing at 20. Appellant then "lurched on the car" and was arrested. Transcript of suppression hearing

at 20.  When Officer Marino went into appellant's pocket, he found two plastic baggies with crack cocaine.

{¶17} On cross-examination, Sergeant Marino testified that he had observed appellant 10 or 15 seconds before appellant actually saw Marino and his partner. When asked, he indicated that he had not observed any criminal activity by appellant prior to stopping him and had no basis for believing that appellant was engaging in criminal activity or was armed. Office Marino further testified that after appellant was unable to state who he had been visiting and the officers exited their cruiser, appellant was not free to leave. Officer Marino admitted that appellant did not make any attempt to flee or run away and gave his name when asked. On cross-examination, the officer further testified that the lump in appellant's pocket could have been an innocent item as well.

{¶18}  On redirect, Sergeant Marino testified that appellant did not have a pass to be at Skyline Terrace and that the lump in appellant's pocket felt like narcotics.

{¶19} At the conclusion of the suppression hearing, the trial court denied the Motion to Suppress, stating, in relevant part, as follows:

{¶20} "It is the Court's findings that based upon the testimony which I have in front of me that there was a consensual encounter, there was evasive type of answer. Up until that point Mr. Holmes was free to go.  After he gave the evasive answer he was not.

{¶21} "And the Court does find from the totality of the circumstances that the officer at that point in time did have the reason - - did have reason, as he has stated, to go forward with the patdown for the reasons that the officer testified to."  Transcript of

Suppression hearing at 42-43. A Judgment Entry denying the motion was filed on February 1, 2011.

{¶22} On February 4, 2011, appellant filed a Motion to Reconsider based on this Court's Janaury 31, 2011, decision in *State v. Jones*, 5th Dist. No. 2010CA00039, 2011-Ohio-535. On February 7, 2011, appellant withdrew his former not guilty plea, entered a plea of no contest and was found guilty by the trial court. As memorialized in a Judgment Entry filed on February 8, 2011, the trial court denied appellant's Motion to Reconsider.

{¶23} Pursuant to a Judgment Entry filed on March 29, 2011, appellant was placed on community control for a period of three (3) years under specified terms and conditions.

{¶24} Appellant now raises the following assignment of error on appeal:

{¶25} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS."

I

{¶26} Appellant, in his sole assignment of error, argues that the trial court erred in denying his Motion to Suppress. We agree.

{¶27} Appellate review of a trial court's decision to grant a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 713 N.E.2d 1 (4th Dist. 1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972 (1992). A reviewing court is bound to accept the trial court's findings of fact if they are supported

by competent, credible evidence. *State v. Metcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (4th Dist. 1993).

{¶28} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); and *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist. 1991). Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (4th Dist. 1983). Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Claytor,* 85 Ohio App.3d 623, 620 N.E.2d 906 (4th Dist. 1993), and *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (8th Dist. 1994).

{¶29} In the case sub judice, appellant argues that the trial court erred in denying appellant's Motion to Suppress because the police lacked reasonable suspicion

to stop appellant, because the pat-down search of appellant was unconstitutional, and because the item found during the search was not immediately apparent as contraband.

{¶30} Because we believe that the issue concerning the pat-down of appellant is dispositive, we shall address such issue first. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that a limited pat-down search is justified when an officer reasonably concludes the individual, whose suspicious behavior he is investigating at close range, may be armed and, thus, dangerous to the police officer and others. *Id.* at 24. Officers need not forsake reasonable precautionary measures during the performance of their duties. *State v. Evans,* 67 Ohio St.3d 405, 410, 618 N.E.2d 162 (1993). The court must determine whether the officer had a reasonable, objective basis for frisking the suspect. See, *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991). In determining whether an officer's beliefs are reasonable, a court must consider the totality of the circumstances involved in the stop. *State v. Bobo*, 37 Ohio St.3d 177, 180, 524 N.E.2d 489 (1988). An officer need not testify he was actually in fear of a suspect, but he must articulate a set of particular facts which would lead a reasonable person to conclude a suspect may be armed and dangerous. *Evans,* supra, at 413. Rather, "[e]vidence that the officer was aware of sufficient specific facts as would suggest he was in danger" satisfies the test set forth in *Terry,* supra. *Id.*

{¶31} An officer must have a reasonable *individualized* suspicion that the suspect is armed and dangerous before he may conduct a pat-down for weapons. See *Terry,* supra; *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). See also *Maryland v. Buie*, 494 U.S. 325, 334, 108 L.Ed2d 276, 110 S.Ct. 1093, (1990), fn.2

("Even in high crime areas, where the possibility that any given individual is armed is significant, *Terry* requires reasonable, individualized suspicion before a frisk for weapons can be conducted.")

**{¶32}** In *Ybarra,* police officers had a search warrant to search a public tavern and a bartender for narcotics. When the officer entered the bar, they announced that they were also going to search the patrons for weapons. One of the officers frisked Ybarra, who was one of the patrons, twice, and removed a cigarette pack containing several packets of heroin from his pocket. The United States Supreme Court held that the pat-down search of Ybarra was unconstitutional under *Terry,* supra, because the warrant did not authorize a search of the patrons and officers did not have reasonable suspicion to frisk Ybarra. *Ybarra,* at 90–93.

**{¶33}** The United States Supreme Court held: "The initial frisk of Ybarra was simply not supported by a reasonable belief that he was armed and presently dangerous, a belief which this Court has invariably held must form the predicate to a pat-down of a person for weapons. *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612; *Terry v. Ohio,* supra, 392 U.S., at 21–24, 27, 88 S.Ct., at 1879–1881, 1883. When the police entered the Aurora Tap Tavern on March 1, 1976, the lighting was sufficient for them to observe the customers. Upon seeing Ybarra, they neither recognized him as a person with a criminal history nor had any particular reason to believe that he might be inclined to assault them. Moreover, as Police Agent Johnson later testified, Ybarra, whose hands were empty, gave no indication of possessing a weapon, made no gestures or other actions indicative of an intent to commit an assault, and acted generally in a manner that was not threatening. At the suppression hearing,

the most Agent Johnson could point to was that Ybarra was wearing a 3/4–length lumber jacket, clothing which the State admits could be expected on almost any tavern patron in Illinois in early March. In short, the State is unable to articulate any specific fact that would have justified a police officer at the scene in even suspecting that Ybarra was armed and dangerous." *Id.* at 92–93 (footnote omitted).

{¶34} In *State v. Gilmer,* 5th Dist. No.2009 CA 00283, 2010–Ohio–4631, this Court found that police did not have a reasonable, articulable suspicion to justify a pat-down of a bar patron. Officers had entered the bar to check the validity of the liquor license of the establishment. While in the bar, officers asked the patrons to produce identification. Appellant appeared nervous and attempted to quickly finish the two drinks in front of him so he could leave the bar. We concluded that the officer did not have an individualized suspicion that appellant was armed and dangerous because the officer testified that he did not go to the bar to find appellant, he had no reports that appellant was involved in any criminal activity and he never saw appellant with a gun. *Id.* at ¶ 41. The officer further testified that he did not see a bulge or any metal object on appellant that looked like a weapon and when appellant stood up, he did not see any suspicious objects on appellant. *Id.* The officer testified that the only reason he believed that appellant might have a weapon on him was because appellant was nervous while everyone else at the bar "seemed to ... be okay with the fact that the police are in there checking the liquor license, asking for people's identification." *Id.* See also *State v. Jones*, 5th Dist. No. 2010CA00039, 2011-Ohio-535.

{¶35} In the case sub judice, Sergeant Marino testified that he patted appellant down "because of the area and the circumstances leading up to that point. His actions

as far as walking across the parking lot, he observed us trying-it appeared to me that he was trying to evade us or at least get out of the apartment complex before we contacted him. And I conducted a Terry patdown for officer safety purposes." Transcript of Suppression hearing at 19-20.

{¶36} However, on cross-examination, Sergeant Marino testified that he had no specific information that appellant was engaged in criminal activity  and had not observed appellant engaging in any criminal activity prior to patting him down. He further testified that he had no information causing him to believe that appellant was armed and that there had been no reports of a man with a gun.

{¶37} Based on the foregoing, we find that the officers did not have a reasonable individualized suspicion that appellant was armed and, therefore, did not have reason to conduct a pat-down search of appellant's person for weapons. We find, therefore, that the trial court erred in denying appellant's Motion to Suppress.

{¶38} Appellant's sole assignment of error is sustained.

{¶39} Accordingly, the judgment of the Stark County Court of Common Pleas is reversed and this matter is remanded for further proceedings.

By: Edwards, J.

Hoffman, P.J. concurs and

Farmer, J. dissents

_____

_____

_____

JUDGES

JAE/d1212

Farmer, J., dissents

{¶40} I respectfully dissent from the majority's view that the officers did not have reasonable articulable cause to stop and pat-down appellant for weapons.

{¶41} The United States Supreme Court has recognized that a stop and pat-down search is appropriate when there is unprovoked flight from police along with the totality of the circumstance. *Illinois v. Wardlow* (2000), 528 U.S. 119. The Supreme Court of Ohio has recognized the *Wardlow* case. *State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, reversed on other grounds. In *State v.Bobo* (1988), 37 Ohio St.3d 177, the Supreme Court of Ohio found several factors justifying the stop in *Bobo* similar to the case sub judice:

{¶42} "(1) The area in which the action occurred was an area of very heavy drug activity in which weapons were prevalent;

{¶43} "(2) It was nighttime, when weapons could easily be hidden;

{¶44} "(3) One of the officers who approached the vehicle in which Bobo was sitting had about twenty years of experience as a police officer and numerous years in the surveillance of drug and weapon activity; included in this experience were about 500 arrests each for guns or drugs city-wide and over 100 arrests in the area in which Bobo was parked;

{¶45} "(4) The officer had knowledge of how drug transactions occurred in that area;

{¶46} "(5) The officer had observed Bobo disappear from view, reappear when the police car was close, look directly at the officers, and then bend down as if to hide something under the front seat;

**{¶47}** "(6) The officer had experience in recovering weapons or drugs when an individual would make the type of gesture made by Bobo in ducking under his seat; and

**{¶48}** "(7) The police officers were out of their vehicle and away from any protection if defendant had been armed."  Katz, Ohio Arrest, Search and seizure (2009) 348-349, §15:17.

**{¶49}** In this case, appellant was a potential trespasser in the apartment complex at 1:00 a.m. which was in a high crime/drug area and when he observed the police, he immediately changed his course and quickened his pace away from the officers.

**{¶50}** I would find the officers' reasonable suspicion of criminal activity was appellant's trespass on the property and his evasive behavior.  Once stopped, and under the totality of the circumstances, the officers had the right to pat-down appellant.

**{¶51}** I would find the trial court did not err in denying the motion to suppress.

_____

HON. SHEILA G. FARMER

[Cite as *State v. Holmes*, 2012-Ohio-1589.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JOSEPH HOLMES | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011CA00101 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is reversed and remanded to the trial court for further proceedings.  Costs assessed to appellee.

_____

_____

_____

JUDGES